UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASHLEY SMITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED CLINICAL EMPLOYMENT STAFFING, LLC,<br><br>Defendant. | Case No.   5:21-cv-07325-EJD<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 13 |

Before the Court is Plaintiffs Ashely Smith and Donna Chang's motion to remand. Memorandum of Points and Authorities in Support of Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447 ("Mot."), Dkt. No. 13.  On November 3, 2021, Defendant Advanced Clinical Employment Staffing, LLC filed an opposition to Plaintiffs' motion to remand, to which Plaintiffs filed a reply.  *See* Defendant's Opposition to Plaintiffs' Motion to Remand ("Opp."), Dkt. No. 15; Plaintiffs' Reply in Support of Motion to Remand Pursuant to 28 U.S.C. § 1447 ("Reply"), Dkt. No. 16.  Having considered the record in this case, the Parties' papers, and the relevant law, the Court **DENIES** Plaintiffs' motion to remand.[1]

**I.     BACKGROUND**

On August 12, 2021, Plaintiffs filed an unverified complaint in the Santa Clara County Superior Court against Defendant, alleging: (1) failure to pay for all hours worked; (2) failure to pay minimum wage; (3) failure to pay overtime; (4) failure to authorize and/or permit meal breaks; (5) failure to authorize and/or permit rest breaks; (6) failure to reimburse business-related

---

[1] On May 13, 2022, the Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  *See* Dkt. No. 19.

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND

1

expenses; (7) failure to furnish accurate wage statements; (8) waiting time penalties; and (9) unfair business practices. *See* Compl. Defendant, an Alabama limited liability company, is a temporary staffing agency for healthcare facilities throughout California. Compl. ¶ 7. Specifically, Defendant contracts with healthcare facility clients to provide travel and/or strike nurses, and separately enters contracts with individual nurses to satisfy its facility contracts. Compl. ¶ 7; *see also* Declaration of Regina Allcorn in Support of Defendant's Opposition to Plaintiff's Motion to Remand ("Allcorn Decl.") ¶ 3, Dkt. No. 15-1. The nurse contracts are typically for either a four, eight, or twelve-week term, and provide for either three or four twelve-hour shifts per week. Allcorn Decl. ¶ 3.

Plaintiffs were both hired to work as travel nurses in California. Plaintiff Smith, a resident of Indiana, was hired to work at O'Connor Hospital in Santa Clara County, California for an approximately thirteen-week contract assignment starting on or about December 16, 2019, and ending on or about March 14, 2020. Compl. ¶¶ 6, 11. Plaintiff Smith worked less than two weeks before she was terminated after she got sick. Compl. ¶ 11. Plaintiff Chang, a resident of Ohio, was also hired to work at O'Connor Hospital in Santa Clara County, California for an approximately four-week contract assignment starting on or around March 4, 2019, and ending on or around March 30, 2019. Compl. ¶¶ 6, 12. However, Defendant converted Plaintiff Chang's position to a non-exempt, hourly-paid nurse because the hospital she was working at became engaged in a trade dispute. Defendant subsequently terminated Plaintiff on or around March 13, 2019. Compl. ¶ 12. Each Plaintiff was hired to work twelve-hour shifts, and thus received overtime compensation during their contracts. Compl. ¶¶ 11–12; Allcorn Decl. ¶ 6.

Plaintiffs allege that Defendant failed to pay all overtime payments based on two theories. First, with respect to non-strike travel assignments, Plaintiffs allege that Defendant adjusted the "travel stipends" it promised to its employees, including housing, meals and/or incidental payments, based on the number of hours or shifts they worked in a given week, but it unlawfully failed to include the value of those "travel stipends" in its employees' regular rates of pay for purposes of calculating overtime pay. Compl. ¶¶ 13–15. For example, the Complaint alleges that

1  Defendant's employment contract with Plaintiff Smith promised to pay her $2,135 per week for
2  "housing stipends," but also provided, "the weekly housing per diem will be paid as a percentage
3  per day based on the number of days worked during the prior week." Compl. ¶ 14.  Second, with
4  respect to travel assignments, Plaintiffs claim that Defendant required its employees to take
5  company provided shuttles to commute to work, but it failed to compensate them for time spent on
6  those shuttles.  Compl. ¶¶ 16–17.

The Complaint does not plead a specific amount in controversy but seeks to certify a class consisting of "[a]ll of Defendant's non-exempt employees who were assigned to work at any facility inside California" from the filing date of the complaint to the date of class certification. Compl. ¶¶ 24–25.  However, the Complaint asserts that under California Labor Code § 203 Plaintiffs and other putative class members must be compensated for "all their unpaid wages earned and an additional penalty equal to the daily earnings of such employees up to an amount equal to those owed for 30 days of work." Compl. ¶ 71.

On September 20, 2021, based on its assertion that the requisite amount in controversy to create diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), exceeds $5 million, Defendant removed the action to the United States District Court for the Northern District of California.  Plaintiffs challenge the sufficiency of Defendant's evidence, arguing that Defendant has not met its burden of showing that the amount in controversy exceeds the amount required under Section 1332(d).

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction over those matters authorized by the Constitution or by Congress. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  The party seeking removal bears the burden of establishing jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The Court strictly construes the removal statute against removal jurisdiction. *Id.*  Federal jurisdiction must be rejected if there is any doubt as to the right of

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND
3

removal in the first instance. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Federal subject matter jurisdiction may be premised on CAFA. 28 U.S.C. § 1332(d)(2). To invoke diversity jurisdiction pursuant to CAFA, it must be established that at least one plaintiff and one defendant are citizens of different states, that the class has more than 100 members, and that the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. *Id.* "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

With respect to the amount in controversy requirement, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff's state court complaint demands monetary relief of a stated sum, "that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Id.* at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citation omitted).

Under CAFA, there is no presumption against removal. *Id.* at 554. "Where facts are in dispute, the statute requires district courts to make factual findings before granting a motion to remand a matter to state court." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013). On a plaintiff's motion to remand, it is the defendant's burden to establish jurisdiction by a preponderance of the evidence. *Dart*, 574 U.S. at 88. In proving the amount in controversy, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015) ("Under this

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND

4

system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."); *see also Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("[I]t is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.").

### III. DISCUSSION

The parties do not dispute that the first two requirements of § 1332(d) are satisfied. Thus, the only question at issue is whether Defendant has proven the amount-in-controversy requirement. *See* Mot. at 5. Plaintiffs contend that Defendant unreasonably and improperly calculates the amount in controversy by relying on uncredible figures. *See* Reply at 1. The Court disagrees.

Generally, the Ninth Circuit distinguishes between complaints of "uniform" violations and those alleging a "pattern and practice" of labor law violations. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). Regarding the first type, where a plaintiff's complaint specifically alleges a "uniform" practice *and* the plaintiff offers no competent evidence in rebuttal to a defendant's showing, courts have found a defendant's assumption of a 100 percent violation rate to be reasonable. *See Dobbs*, 201 F. Supp. 3d at 1188 (collecting cases). "*Dart* and *Ibarra* illustrate that a defendant is required to show more than an assumed universal violation rate, but is not required to provide extensive business documents to prove the amount in controversy to a legal certainty." *Id.* (citations omitted).

In contrast, where a plaintiff alleges a "pattern and practice" of labor violations, the Ninth Circuit has found that a defendant's assumption of a 100 percent violation rate would be unreasonable. *See Ibarra*, 775 F.3d at 1198–99 ("We agree with the district court that a 'pattern and practice' of doing something does not necessarily mean *always* doing something."). In such "pattern and practice" cases a defendant may still demonstrate that the amount-in-controversy is met by relying on extrapolations from admissible statistical evidence. *See LaCross*, 775 F.3d at 1202–03.

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND

5

In this case, the Complaint alleges that "Defendant [] had a policy and/or practice of not including the value of . . . 'travel stipends,' including lodging, meals and/or incidentals . . . for the purposes of calculating [employees'] overtime or double time pay." Compl. ¶ 14. In their motion, Plaintiff alleges that their "claims for overtime . . . are limited to those employees who worked either travel or strike assignments, or both." Mot. at 8; *see also* Mot. at 2 ("The Complaint alleges that only those employees who worked a strike assignment were denied overtime pay, minimum wage, and pay for all hours worked."). However, the sole nature of Defendant's business operations in California are travel and strike assignments where the nurses receive at least some amount of overtime compensation. Allcorn Decl. ¶ 6. Using 2019 and 2020 as examples, all 363 nurses who worked for Defendant in 2019 received a travel stipend, and all 265 nurses who worked for Defendant in 2020 received a travel stipend. Allcorn Decl. ¶¶ 7–8. These nurses were also scheduled to work either three or four twelve-hours shifts per week, and thus would have been owed overtime pay. Allcorn Decl. ¶ 3. Therefore, every nurse who worked for Defendant in California in 2019 or 2020 would be entitled to recover if Plaintiffs prevail on their unpaid overtime allegations.

If the Court only looked at Plaintiffs' general allegations of a "pattern and practice," a 100% violation rate would be inappropriate. *See Ibarra*, 775 F.3d at 1198–99 & n.3; Compl. ¶¶ 13–20. But, practically, Plaintiffs' claims apply to the entire class as the *entire* putative class potentially has unpaid overtime claims. Accordingly, while Plaintiffs have attempted to frame their allegations as "pattern and practice" violations, Plaintiffs have alleged universal violations. Specifically, Plaintiffs have asserted a universal violation regarding allegedly unpaid overtime connected to the housing stipend and thus this Court can properly assume a 100% violation rate regarding such allegations for purposes of calculating the amount in controversy. *See id.* at 1199; *see also Dobbs*, 201 F. Supp. 3d at 1188–89.

As noted, Plaintiffs allege that Defendant failed "to take supposed 'travel stipends' into account in determining overtime rates." Compl. ¶¶ 13–15. Defendant acknowledges the existence of a $2,135 per week housing stipend, as stated in Plaintiff Smith's "Healthcare Travel Service

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND

6

1    Agreement." Allcorn Decl. ¶ 9. Defendant also acknowledges, for purposes of calculating the

2    amount in controversy, that nearly every potential class member received a weekly housing

3    stipend in this same amount in (at least) 2019 and 2020. Allcorn Decl. ¶ 9; *see also* Opp. at 7.

4    Based on these assumptions, Plaintiffs' unpaid overtime allegations regarding housing stipends

5    alone potentially place at least $4,022,415.36 in controversy for the years 2019 and 2020.

6          Under each contract, employees were scheduled to work 12-hour shifts, either three or four

7    days a week and thus were necessarily entitled to overtime pay. In 2019 and 2020, employees

8    were paid hourly rates ranging from $30 to $70 per hour. Allcorn Decl. ¶ 10. Defendant

9    reasonably estimates that the average hourly rate of pay in 2019 was $53 per hour, and $52 per

10   hour in 2020. Allcorn Decl. ¶ 10; *see also Dart*, 574 U.S. at 89 (noting that a defendant need not

11   prove to "a legal certainty that the amount in controversy requirement has been met"). Assuming

12   an employee worked the shortest possible contract (four weeks) and worked only three days per

13   week, an employee would work 96 regular hours, and 48 overtime hours. By working a full

14   contract, the employee should have received a housing stipend of $8,540 per contract (housing

15   stipend x 4 weeks). The "per hour" value of the additional compensation would therefore be

16   $88.96 (housing stipend value / hours worked). In 2019, this creates a "regular rate of pay" of

17   $141.96 (average hourly rate + additional compensation), and thus an overtime rate of $212.94. If

18   an employee worked 48 hours of overtime per contract in 2019, the total overtime liability would

19   be around $6,405.12 per contract. Since all 363 nurses employed by Defendant in 2019 were not

20   paid this potential, additional overtime, the amount in controversy for overtime alone in 2019

21   could be as much as $2,325,058.56, if not more.

22         In 2020, the potential amount in controversy is similar. Adding the $88.96 "per hour"

23   value of additional compensation to the 2020 average hourly rate of $52 per hour creates a

24   "regular rate of pay" of $140.96, and an overtime rate of $211.44. If an employee worked 48

25   hours of overtime per contract in 2020, the total overtime liability would potentially be $6,405.12

26   per contract. Since all 265 employees employed by Defendant in 2020 were not paid this

27   potential, additional overtime, the amount in controversy for overtime alone in 2020 could be as

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND
7

much as $1,697,356.8, if not more.

Compiling these figures, the potential amount in controversy for unpaid overtime regarding travel stipends amounts to $4,022,415.36 for 2019–2020.

Plaintiffs next argue that Defendant's assumption of 25% of aggregate damages for attorneys' fees is excessive. Attorneys' fees are properly included in an amount in controversy when, like here, "an underlying statute authorizes an award of attorneys' fees." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In challenges to the amount in controversy under CAFA, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Fritz v. Swift Transp. Co. of Az., LLC*, 899 F.3d 785, 796 (9th Cir. 2018); *But see Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1238 (C.D. Cal. 2019) (using 25% as the attorneys' fee rate because it was "the rate previously imposed by Plaintiffs' counsel in a similar case").

Plaintiffs do not explain why Defendant's 25% figure is unreasonable or cite any authority to support their position. The above calculations support a finding that the underlying damages amount to which the benchmark would be applied is sufficiently certain. Additionally, in 2020, Plaintiffs' counsel received a 30% award in a wage and hour class action alleging "violations of the California Labor Code." *McLemore v. Nautilus Hyosung Am., Inc.*, 2020 WL 8882792 (C.D. Cal. 2020). Accordingly, because Plaintiffs' counsel has received a similar (and higher) rate in a similar case, the Court finds that Defendant's notice of removal properly included attorneys' fees of 25% the aggregate damages. At minimum, this puts an additional $1,005,603.84 in controversy (25% of the $4,022,415.36).

Defendant has met its burden of demonstrating an amount in controversy greater than $5,000,000. Defendant based its calculations on reasonable assumptions founded in the Complaint. Thus, Defendant's calculation of an amount in controversy of at least $5,028,019.2 is reasonable and satisfies CAFA's jurisdictional threshold.

Case No.: 5:21-cv-07325-EJD
ORDER DENYING MOTION TO REMAND

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to remand.

**IT IS SO ORDERED.**

Dated: June 7, 2022

EDWARD J. DAVILA
United States District Judge